IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT ARTHUR VORIS, (TDCJ-CID #1225841), | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-16-0764 |
| RANDALL K. THORNTON, et al., | § § | |
| Defendants. | § § § | |

**MEMORANDUM AND OPINION**

Plaintiff Robert Arthur Voris, a state inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), has filed a complaint under 42 U.S.C. § 1983, alleging that prison officials have violated his civil rights. With the assistance of counsel, Voris sues Joseph Dudley, sergeant at the Ellis Unit; Deleta Jones, building captain at the Ellis Unit; and Randall K. Thornton, correctional officer at the Ellis Unit. Voris alleges that the defendants used excessive force and retaliated against him.

Defendant Dudley has moved for summary judgment. (Docket Entry No. 26). Voris responded. (Docket Entry No. 30). Based on the pleadings, the motion, the summary judgment record, and the applicable law, this court grants the motion for summary judgment filed by Sergeant Dudley. The reasons for this ruling are stated below.

**I.      Voris's Allegations**

On March 28, 2014, while confined at the Ellis Unit, Voris was in the C-6 cellblock

dayroom, a common area in which inmates watch television, visit, and play dominos and checkers. Voris explains that the dayroom area is separated from the main hallway at the Ellis Unit by glass panels which require considerable force to break. Voris states that he was in the dayroom, and Officer Thornton was in the main hallway, escorting another inmate. Officer Thornton observed Voris through the glass wall separating the dayroom from the main hallway. Voris alleges that without any provocation from Voris, Officer Thornton ordered Voris to place his face against the glass wall separating the dayroom and hallway. After Voris complied with the order, and had placed his face against the glass wall, Officer Thornton balled up his fist and punched the window pane directly where Voris's face was positioned. The window shattered, causing the shards of glass to puncture Voris's eye. Voris suffered substantial injuries to his eye. Voris was taken to the Ellis Unit infirmary where medical treatment was administered. The injury was so severe as to require corrective surgery at the University of Texas Medical Branch, in Galveston, Texas, by Doctors Betty Williams and Marcia Coca. The injuries to Voris's eye resulted in a period of blindness in the eye, with an ongoing fear of experiencing disease or recurring blindness in the eye. Voris states that he suffered ongoing severe mental and emotional distress.

Following Officer Thornton's physical assault upon Voris, Sergeant Dudley and Officer Thornton left the main hallway and entered the dayroom, where the injured Voris was situated. Voris immediately began to exercise his First Amendment right to complain to Sergeant Dudley regarding what had transpired, and utilize the informal resolution component to the TDCJ-CID Offender Grievance procedure. Sergeant Dudley soon halted Voris's complaint, and with Officer Thornton, escorted Voris to the Ellis infirmary. Voris asserts that Sergeant Dudley immediately recognized the strong likelihood that Voris would file a grievance complaining of Officer Thornton's

conduct, and pursue a civil rights lawsuit against Officer Thornton. In retaliation for the exercise of Voris's First Amendment, Sergeant Dudley refused to take any witness statements from several available inmates in the dayroom who witnessed Officer Thornton's illegal use of force. After taking Voris to the infirmary for treatment following the assault, Sergeant Dudley intentionally provided false information concerning the incident to infirmary personnel, which Sergeant Dudley knew would be recorded in government documents such as Voris's medical record and infirmary records. Sergeant Dudley stated to infirmary personnel that Officer Thornton had simply tapped on the glass and the glass shattered. Voris asserts Sergeant Dudley chilled the exercise of Voris's First Amendment right to state to infirmary personnel what actually had transpired during the assault. Before Voris could speak to infirmary personnel, Sergeant Dudley admonished Voris not to start trouble if Voris wanted to graduate (from a program in which Voris was currently enrolled and critical to Voris's classification status and release eligibility) and stay out of administrative segregation. This had the effect of chilling (and silencing) Voris's First Amendment right to complain to infirmary personnel of the incident and Officer Thornton's misconduct. The threats and conduct of Sergeant Dudley were capable of deterring a person of ordinary firmness from further exercising his First Amendment right.

Voris seeks compensatory damages, punitive damages, and nominal damages against the named defendants in varying amounts. (Docket Entry No. 12, pp. 5-6).

## II. Procedural History

Voris filed this lawsuit with the assistance of counsel on March 24, 2016. Summons for the three named defendants were issued by the Clerk of Court on March 25, 2016. On May 18, 2016, Defendants Dudley and Jones filed a motion to dismiss. Voris responded that existing claims

involving Defendant Deleta Jones will not be pursued in light of the practical difficulty in obtaining additional evidence regarding her involvement regarding her supervisory role. (Docket Entry No. 6, p. 3).

On May 18, 2016, the Texas Attorney General's Office advised the court that Randall Thornton had not been served because counsel had not been able to locate an officer named Randall Thornton who was working at the Ellis Unit at the times complained of by Voris. (Docket Entry No. 4, p. 1 n.1). On July 18, 2016, Voris sought an additional 120 days within which to serve Officer Randall K. Thornton. (Docket Entry No. 7). In an order entered on November 30, 2016, this court noted that the requested period of an additional 120 days had expired, but Officer Randall K. Thornton had not been served.

This court instructed Voris to show cause, by December 15, 2016, why the case should not be dismissed based on his failure to timely serve process as required by Rule 4(m) of the Federal Rules of Civil Procedure. Voris was warned: If such good cause is not shown, or if no response is received within such time, this case may be dismissed without prejudice and without further notice to Voris.

In his response to the show cause order, Voris explained that he learned that the correct name of the defendant is "K. Thornton," instead of "Randall K. Thornton." Voris sought an additional extension of 70 days or until January 31, 2017, to complete service. On January 5, 2017, this court granted Voris's Motion for Extension of Time to complete service. (Docket Entry No. 10). On February 6, 2017, counsel for Defendants Jones and Sergeant Dudley advised the court that Thornton is currently employed at the Estelle Unit and will file a responsive pleading within 14 days. (Docket Entry No. 15).

O:\RAO\VDG\2016\16-0764.f03.wpd

4

On March 22, 2017, this court granted the motion to dismiss filed by Sergeant Dudley and Jones, (Docket Entry No. 4), in part, and denied it, in part. This court granted Voris's motion to dismiss Deleta Jones.

This court ordered Officers Dudley and Thornton to file a dispositive motion, namely, a motion for summary judgment under FED. R. CIV. P. 56, no later than April 27, 2017. Sergeant Dudley moves for summary judgment as to Voris's retaliation claim.

### III. The Applicable Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'– that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*,

37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

Defendants provide the following summary judgment evidence:

(A)  Office of Inspector General Investigation No. 2014.03203; and

(B)  Interrogatory responses of Joseph Dudley.

Voris responded and filed the following exhibits:

(A)  Affidavit of Voris;

(B)  TDCJ Office of the Inspector General Supplement Criminal Case Report; and

(C)  An article entitled, "Ad-Seg: Time in Isolation at Texas Prisons."

## IV. Qualified Immunity

The defendants argue that Voris fails to show that Sergeant Dudley retaliated against Voris in violation of the First Amendment. The defendants argue further that Voris fails to establish that any constitutional violation occurred or that their actions were objectively unreasonable under the circumstances. The defendants maintain, therefore, that they are entitled to qualified immunity. (Docket Entry No. 26, pp. 3-4).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982)). This is an "exacting standard," *City & Cnty. of S.F., Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015), that "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 106 S. Ct. 1092, 1096 (1986)). A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citation omitted). If the plaintiff satisfies both prongs of this inquiry, the court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established when the disputed action occurred. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Id.* (citation omitted). "An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight." *Id.* (citation omitted).

As this standard reflects, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist

regarding the reasonableness of the official's conduct." *Id.* at 654 (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

A reviewing court may consider the steps of the qualified immunity analysis in any sequence. *See Pearson*, 129 S. Ct. at 818; *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). In this case, the court begins by examining whether Voris establishes a constitutional violation of the Eighth Amendment.

### A.     The Retaliation Claim

Voris asserts that prison officials have retaliated against him for complaining about the use-of-force incident on March 28, 2014. He claims that his grievances were denied as an act of retaliation.

Prison officials may not retaliate against an inmate for exercising his right of access to the courts or complaining to a supervisor about a prison employee or official. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). To prevail on a claim of retaliation, an inmate must establish: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for exercising that right, (3) a retaliatory or adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)(quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995 (1997). Conclusory allegations of retaliation are insufficient to withstand a motion for

summary judgment. *Woods*, 60 F.3d at 1166. "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods v. Smith*, 60 F.3d at 1166 (internal quotation marks omitted).

With regard to the first prong of a retaliation claim, "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684). Voris alleges that Sergeant Dudley retaliated against Voris because Voris intended to file an administrative grievance against Sergeant Dudley and Officer Thornton. Thus, Voris alleged that he had exercised a specific constitutional right. *See Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008); *Reese*, 322 F. App'x at 383.

The second prong requires that Voris show that Sergeant Dudley intended to retaliate against Voris for exercising that right. Voris has not produced direct evidence of a retaliatory motive. Instead, Voris only offers his personal belief that he is the victim of retaliation. Voris's speculation that Sergeant Dudley's actions caused the denial of his grievances finds no support in the record. Voris has failed to allege a chronology of events from which retaliation may be plausibly inferred.

The summary judgment evidence shows that on March 29, 2014, Voris filed Step 1 grievance No. 2014119410. Voris reported that on March 28, 2014, Officer Thornton had summoned him to the window and proceeded to punch the glass with his bald fist. As a result, the flying glass injured Voris's eye. Voris stated that at the unit infirmary, he was told not to make trouble if he wanted to

stay in the GRAD program (Gang Renunciation and Disassociation) and not be placed in administrative segregation. Voris did not specify whether Officer Thornton or Sergeant Dudley actually made this statement. Officers Thornton and Sergeant Dudley told medical personnel that Officer Thornton had tapped the glass, causing it to shatter. Voris complained that he was not allowed to give his account of events. Voris also stated that inmates in the GRAD program were constantly being threatened with placement in administrative segregation. (Docket Entry No. 26-3, pp. 2-3).

On April 10, 2014, Warden Morris responded:

> A unit investigation was conducted into your complaint and a referral was made to the O.I.G. The O.I.G. found insufficient evidence to open an O.I.G. investigation. No further action warranted by this office.

(Docket Entry No. 26-3, p. 3).

On April 13, 2014, Voris filed a Step 2 grievance appealing the denial of the Step 1 grievance. Voris complained that prison staff and the Office of the Inspector General had failed to conduct an investigation into his grievance. He asserted that Sergeant Dudley and other investigating officers were trying to cover up the criminal acts of Officer Thornton by falsifying documents. (Docket Entry No. 26-2, p. 30).

On May 1, 2014, B. Parker responded:

> This issue has been reviewed by The Office of the Inspector General and that office has determined that there is insufficient evidence to warrant opening a case. No further action will be taken.

(Docket Entry No. 26-2, p. 31).

The summary judgment evidence further shows that the Office of the Inspector General conducted an investigation and determined that Voris's grievances were unfounded. The report

provides in relevant part as follows:

> I, Jessica McMurrey, am a Criminal Investigator with the Texas Department of Criminal Justice - Office of Inspector General (OIG), and assigned to the Investigations Division of this agency, which includes jurisdiction in Walker County, Texas, where this offense occurred.
>
> REPORTEE/VICTIM: ROBERT VORIS; #1225841; Offender: According to the Emergency Action Center (EAC) report, OIG was not documented as being notified. OIG Investigator Clayton Thomason received information on this incident after a Step 1 Grievance (#2014119410) was completed and closed. An investigation was opened to further investigate the allegations. The case was re-assigned to me on January 8, 2015.
>
> CRIME SCENE: This offense occurred at the Ellis Unit, a Texas Department of Criminal Justice (TDCJ) male prison unit located at 1697 FM 980, Huntsville, Texas 77320. More specifically, this offense occurred in the C6 Dayroom.
>
> NARRATIVE: A Texas Department of Criminal Justice, Step 1 Grievance was written and submitted by Offender Voris on March 29, 2014 regarding an alleged officer on offender assault involving him and Correctional Officer Kevin Thornton. Offender Voris wrote that on March 28,
> 2014, at approximately 14:00 hours, in the C6 Dayroom, Officer Thornton called Offender Voris to the dayroom window and punched the window. Offender Voris wrote the window broke and Officer Thornton hit him with a closed fist, striking him in the eye and nose. Offender Voris wrote that his nose and eyeball were cut from the incident.
>
> Offender Voris wrote that Officer Thornton and Sergeant Joseph Dudley entered the dayroom and both escorted Offender Voris to the medical department on the unit. Offender Voris wrote that Sergeant Dudley and Officer Thornton told him to not start any trouble or else he would be kicked out of the GRAD Program at the Ellis Unit.
>
> Offender Voris wrote that he was purposely assaulted and threatened by Officer Thornton. Offender Voris wrote that his eyesight had not returned and he was in a lot of pain.
>
> On March 28, 2014, at approximately 15:37 hours, according to the Correctional Managed Care Clinic Notes, from the Ellis Unit Medical Department, Offender Voris stated he was standing near a windowpane when an officer broke it. Offender Voris stated he had glass enter his right eye causing pain and tearing. Offender Voris did state he had a previous injury to the left eye with poor vision in that eye. Offender Voris denied any decrease in vision at that time.

The medical notes indicate Offender Voris did have several small puncture wounds surround the right orbit but no glass was seen. The medical notes stated his eye was irritated and it did appear to have tearing. The medical notes stated the plan given was for Offender Voris to patch his eye for twenty-four (24) hours with ointment and to report for a checkup the following day.

Officer Thornton was instructed to be evaluated by medical staff; however, he refused treatment. Officer Thornton did complete a Worker's Compensation packet due to the incident.

Officer Thornton wrote that he had a scrape on his right hand due to tapping on a window to get the offender's attention to sit down.

The Worker's Compensation packet is submitted with this report.

On March 31, 2014, in the Grievance response, Sergeant Dudley wrote Officer Thornton called him to the C6 hallway. Sergeant Dudley wrote Officer Thornton stated Offender Voris was standing up in the C6 dayroom and admitted to tapping on the window causing it to break. Sergeant Dudley wrote Offender Voris had injuries; however, did not have glasses on and did not state he had injuries to his nose or eyeball.

On April 2, 2014, in the Grievance response, Officer Thornton wrote Offender Voris was standing in the window of the C6 dayroom attempting to horseplay with the GRAD Phase II offenders that he (Thornton) was escorting. Officer Thornton wrote he waived at the offender about three (3) times to sit using hand gestures and Offender Voris refused to sit down. Officer Thornton wrote he tapped on the window to tell him again to have a seat and the window broke.

Officer Thornton wrote he escorted Offender Voris to the medical department on the unit and the injuries were treated. Officer Thornton wrote he never came into contact with Offender Voris nor was he wearing glasses.

OIG Lieutenant Gary Howze reviewed this Grievance on April 4, 2014 and found insufficient evidence to open an OIG Investigation and no further action was warranted. A copy of the Grievance investigation is submitted with this report

NOTE: This investigation was opened on July 17, 2014, after the grievance was completed and closed.

On January 9, 2015, I requested an interview of Offender Voris be conducted by OIG Investigator Patricia Harrison. I also requested a voluntary written statement and to see if Offender Voris would like to pursue criminal charges against Officer Thornton.

VICTIM (CONTINUED): On January 9, 2015, at approximately 14:00 hours, Investigator Harrison interviewed Offender Voris and obtained a voluntary written statement. Offender Voris stated he would like to pursue charges against Officer Thornton.

See Investigator Harrison's Supplement Report for further details on the interview with Offender Voris, which is submitted with this report.

SUSPECT: On February 13, 2015, at approximately 14:55 hours, Officer Thornton was read the Miranda Warning at which time he waived his Constitutional Rights to speak with me. Officer Thornton stated he was confused because he could not see how this incident is a criminal offense. I explained to Officer Thornton that a thorough investigation is being done to determine or prove if an offense occurred or not.

Officer Thornton stated he was escorting GRAD offenders from their wing to the showers. All the Phase 3 offenders were assigned to Charlie (C) Block. As Officer Thornton was escorting Phase 2 offenders, the Phase 3 offenders began taunting those offenders and trying to speak to them. Offender Voris was in the window taunting the other offenders while Officer Thornton was escorting the Phase 2 offenders to the shower. Officer Thornton stated he told him to sit down but he continued to stand, causing a scene.

Officer Thornton gave a verbal command to Offender Voris to sit down, again, and he refused to obey orders. Officer Thornton went up to the window and tapped the glass while Offender Voris was standing there. Officer Thornton stated he did not bang on the window with a lot of force but simply tapped it to try to get Offender Voris' attention and the window broke.

Officer Thornton stated he did not have anything in his hands and he used an open right hand to tap the window. Officer Thornton stated he did not have a ring on his right hand that could have caused the window to break. Officer Thornton stated he called for a supervisor and Sergeant Dudley responded. Officer Thornton stated he personally went into the dayroom to make sure Offender Voris was okay.

Officer Thornton stated Offender Voris covered up his face and stated he had glass in his eyes. Officer Thornton stated the window broke but it did not shatter into a million pieces. I asked Officer Thornton if he made contact with Offender Voris' face and his response was, "I don't believe so, no ma'am."

Officer Thornton stated it was an accident and he had no intentions on breaking the window.

Officer Thornton stated he saw a little cut or scratch on his face. Officer Thornton stated he escorted Offender Voris to the unit's medical department and watched as they did the physical evaluation. Officer Thornton stated medical did the evaluation and everything seemed to be okay.

Officer Thornton stated a supervisor took photographs of the small cuts on his hands while he was in medical. Officer Thornton stated the supervisor asked what happened and it was the same story that was mentioned previously in this report. Officer Thornton stated Offender Voris already had a black eye before this incident occurred. The interview was then terminated.

Officer Thornton did provide a voluntary written statement, which is submitted with this report.

DISPOSITION: After thoroughly reviewing the incident and gathering information, it is determined there is insufficient evidence to prove that Officer Thornton struck Offender Voris in the facial area when the window broke or if the glass caused more damage to Offender Voris' previously damaged eyeball. This case is UNFOUNDED. (Docket Entry No. 26-1, p. 30; Docket Entry No. 26-2, pp. 2-4).

The third prong requires Voris to show a retaliatory adverse act. Some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Morris v. Powell,* 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n.10 (1998)). "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis,* while a transfer to a more dangerous unit might rise to a level of an adverse retaliatory act. *Id.* at 687. Retaliation is actionable only if it "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early,* 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted).

Voris alleges that Sergeant Dudley retaliated against him because Voris was complaining about the incident involving Officer Thornton on March 28, 2014. Voris states that before he could speak to infirmary personnel, Sergeant Dudley admonished Voris not to start trouble if Voris wanted

to graduate from a program in which Voris was enrolled. This program was critical to Voris's classification status and release eligibility. Voris alleges that this had the effect of chilling (and silencing) Voris's First Amendment right to complain to infirmary personnel of the incident and Officer Thornton's misconduct. Voris explains that Sergeant Dudley's misconduct precluded Voris from voicing a full explanation of the harms resulting from the serious injury to his eye to nursing staff, which resulted in a delay in seeing a doctor during which Voris suffered a great deal of pain in his eye. Due to the threats and intimidation from Sergeant Dudley, Voris was chilled from providing a complete explanation to nursing staff as to the extent and adverse effects of his eye injury, and seeing a doctor immediately or being transferred to a hospital.

Voris asserts that the threats and conduct of Sergeant Dudley were capable of deterring a person of ordinary firmness from further exercising his First Amendment right. Voris asserts that Sergeant Dudley threatened to return Voris to administrative segregation. Voris further asserts that Sergeant Dudley threatened to remove Voris from the GRAD program. Voris does not allege that he was actually returned to administrative segregation or removed from the GRAD program, only that the threat was made. The Fifth Circuit has held that a mere threat of future action is not a retaliatory adverse act. *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010) (citing *Jones*, 188 F.3d at 324–25); *Hoffman v. Stulga,* 464 F. App'x 229, 2011 WL 5119532 (5th Cir. 2011). *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Voris further states that he completed the GRAD program on June 26, 2014, and he was transferred from the Ellis Unit to a different unit one week later. (Docket Entry No. 30, Exhibit A). At most, Voris alleges acts which were de minimus and not "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell,* 449 F.3d 682, 686 (5th Cir. 2006). Thus, Voris has not pled any facts showing a

retaliatory adverse act.

Voris alleges that as a result of Sergeant Dudley's actions, his grievances regarding this incident were denied. The summary judgment evidence shows that Sergeant Dudley's alleged actions did not deter Voris from exercising his right to complain about either officer in his grievances. The complained-of use of force and threats took place on March 28, 2014. Voris filed his Step 1 Grievance on March 29, 2014. He later filed his Step 2 Grievance on April 13, 2014.

As noted, Voris asserts that due to Sergeant Dudley's threats, he did not accurately describe the full extent of his injuries to medical personnel. The summary judgment evidence shows that on the date of the incident, March 28, 2014, Voris was treated immediately. His medical record from the date of the incident states, "[Voris] states that he was standing near a window [] when an officer broke it (??) c/o having glass enter his R eye, c/o pain in eye and tearing." (Docket Entry No. 26-3, p. 8). Injuries to his eye were noted, including a shallow corneal abrasion and some conjunctivitis with clear tearing. He was scheduled to follow up with the doctor on Monday, the following day. (*Id.*). Voris offers no summary judgment evidence to create a genuine issue of material fact as to whether Sergeant Dudley's conduct adversely affected Voris's medical care.

The fourth prong requires Voris to show causation. Voris must show that but for his written complaint to prison officials, his grievance would not have been denied.

The summary judgment shows that a grievance investigator conducted an investigation of Voris's Step 1 Grievance. The grievance investigator determined that Voris's grievance was unfounded. Warden Morris concurred with this decision and denied the Step 1 Grievance. Nothing in the record shows that Sergeant Dudley influenced or otherwise participated in the decision to deny the grievance. Voris cannot demonstrate but for Sergeant Dudley's conduct, Voris's grievance

would not have been denied. Voris fails to establish the fourth prong of the retaliation claim. Because Voris has not demonstrated that a constitutional violation occurred, Sergeant Dudley is entitled to qualified immunity and summary judgment on the retaliation claim.

### B. The Due Process Claim

Voris alleges that the defendants violated his civil rights by failing to resolve the complaints presented in his grievances. "A prisoner has a liberty interest only in freedoms from restraint imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (internal citation and quotation omitted). An inmate does not have a constitutionally protected liberty interest in having grievances resolved to his satisfaction. There is no due process violation when prison officials fail to do so. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Edmond v. Martin, et al.*, slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v. Lensing, et al.*, slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). The defendants' alleged failure to address the grievances to Voris's satisfaction did not violate his constitutional rights. The summary judgment evidence shows that prison officials investigated his grievances and provided timely responses.

In a related claim, Voris claims that Sergeant Dudley's reporting of the incident as an accident instead of the use of force violated his rights. Sergeant Dudley offers summary judgment evidence showing that based upon the information ascertained from Officer Thornton and Voris at the scene, Sergeant Dudley determined that the incident should not be classified as a use of excessive force. (Docket Entry No. 32-1, p. 5). Voris fails to submit summary judgment evidence that would

create a genuine issue of material fact as to whether Sergeant Dudley's classification of the incident as an accident instead of a use of force violated his right to due process. Because Voris has not demonstrated that a constitutional violation occurred, Sergeant Dudley is entitled to qualified immunity and summary judgment on the due process claim.

## V. Conclusion

Sergeant Dudley's motion for summary judgment, (Docket Entry No. 26), is GRANTED. Voris's claims against Sergeant Dudley are DISMISSED. Voris's excessive force claim against Officer Thornton is retained for further proceedings.

Sergeant Dudley's Motions to Substitute Exhibit B, (Docket Entry Nos. 31 & 32), are GRANTED.

SIGNED at Houston, Texas, on Feb 23, 2018.

VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE